# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL BRUNO | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-09-3215 |
| CORRECTIONAL MEDICAL SERVICES, *et al.* | * | |
| Defendants | * | |

***

## **MEMORANDUM**

Pending are defendants' motions to dismiss or for summary judgment. Papers No. 14 and 17. Plaintiff opposes the motions. Paper No. 22. For the reasons that follow, the motions, construed as motions for summary judgment, will be granted.[1]

### Background

Plaintiff alleges that on November 10, 2006, he put in a sick call slip because he had been handcuffed behind his back by Officer Nery for approximately 45 to 55 minutes, causing his shoulders to dislocate. Paper No. 1 at p. 4. He further claimed that his rotator cuff was possibly torn and that he was in constant pain, with swelling and numbness. He also states he could not raise his arms.

On November 17, 2006, plaintiff claims medical staff told him nothing was wrong with his shoulders other than some swelling. He was given motrin and "muscle cream." Plaintiff states he wrote ARP complaints but nothing further was done. He concludes that "they"[2] failed to treat his medical needs and failed to use "due care in the performance of their legal duty."

---

[1] Defendants CMS, Wilson, and Tessema assert that plaintiff's claims are time-barred because he became aware of his shoulder injury on November 10, 2006, and filed the instant complaint on December 2, 2009. Paper No. 17 at p. 5. Given the ongoing nature of plaintiff's claim that he was denied care, the complaint will not be dismissed as time-barred.

[2] Plaintiff does not state the names of individual medical staff, rather he simply refers to defendants as "they." Paper No. 1.

Defendants allege that plaintiff received treatment, including surgery, for his shoulder. Paper No. 14 and 17. On November 17, 2006, plaintiff was evaluated by a nurse for his shoulder pain which was noted as a chronic problem. He was prescribed Motrin for pain and scheduled to see a physician's assistant for further treatment. Paper No. 17 at Ex. A. On December 4, 2006, plaintiff was again evaluated for complaints of pain in his right shoulder after being cuffed from behind. He was provided with muscle rub and advised to continue taking Motrin. X-rays of plaintiff's shoulders were ordered on December 21, 2006, and performed on December 26, 2006. The x-rays showed a large bony spur on the shoulder joint and moderate osteoporosis. *Id*.

Plaintiff was seen again on March 30, 2007, when he complained again of shoulder pain due to his shoulders being pulled out of their sockets. He stated he was experiencing numbness and tingling in his arms. The nurse noted neither a decrease in range of motion, nor any swelling or redness. On April 16, 2007, a permanent "cuff in front" order was written and plaintiff was referred for physical therapy, which he received until August 7, 2007. Plaintiff was also referred for an orthopedic consultation for evaluation of his persistent shoulder pain and a medical order for a lower bunk was ordered.

Dr. Robert Cendo evaluated plaintiff on August 23, 2007, and concluded that he had moderate impingement in the right shoulder and mild impingement in the left. He recommended an MRI study of plaintiff's shoulders with a follow up after the scan. The MRI was performed on both shoulders on October 10, 2007, and revealed a small tear in one of the muscles in the rotator cuff of the right shoulder as well as severe osteoarthritic degenerative joint disease. The MRI of the left shoulder showed degenerative joint disease but no rotator cuff damage.

On October 18, 2007, Dr. Cendo recommended that plaintiff undergo an acrominplasty to repair the rotator cuff in his right shoulder and that cuffing plaintiff behind his back should be

avoided in order to prevent further tearing of the rotator cuff. Dr. Cendo further advised that due to the severe degenerative changes to the shoulder, plaintiff would still experience problems even after the surgery. Plaintiff underwent surgery on November 19, 2007, and was provided appropriate aftercare including pain relief. On December 6, 2007, plaintiff resumed physical therapy and continued it until February 21, 2008.

On January 25, 2008, Dr. Sonja Wilson submitted a consultation request form for plaintiff to follow-up with Dr. Cendo. On February 14, 2008, plaintiff told Dr. Cendo that his shoulder was popping and snapping, but Dr. Cendo was unable to reproduce those problems in his office and did not feel them in plaintiff's shoulder. Based on the examination, Dr. Cendo recommended that plaintiff begin more aggressive physical therapy. Dr. Wilson renewed plaintiff's order to be cuffed in front and for a bottom bunk assignment on February 22, 2008. She also requested further physical therapy for plaintiff which was approved, allowing plaintiff to continue physical therapy from March 25, 2008, until February 26, 2009.

In response to plaintiff's continued complaints of pain he was restarted on Ultram on June 9, 2008, and on September 24, 2008, he was put on Lyrica, a medication used to treat nerve pain and fibromyalgia. Plaintiff's prescriptions for Ultram and Lyrica have been continued, his physical therapy has continued, and his condition is monitored by a pain management physician. An x-ray taken on January 31, 2010 showed degenerative changes to his shoulders and a request for another MRI of his shoulders was made on March 3, 2010.

Plaintiff asserts that after the November 19, 2007 surgery on his right shoulder, his symptoms worsened.[3] Paper No. 22. He states his shoulder pops out of place at night when he sleeps. He awakens in a great deal of pain and must push or pull his arm back into place. He

---

[3] A notation in plaintiff's medical record indicates that "even [with] an acromioplasty and repair of rotator cuff he will still have problems with his shoulder because of the arthritis." Paper No. 17 at Ex. B, p. 31.

further claims his range of motion is limited to 90 degrees and the joint grinds and pops. Plaintiff also alleges he had to write ARP complaints for over a year to obtain the surgery on his right shoulder, but has not yet received surgery on his left shoulder.

Plaintiff states he has had surgeries on both hands, including a fusion to his left wrist on April 22, 1989. Paper No. 22. He states he experiences discomfort with numbness, tingling pain and possible nerve damage because he was handcuffed behind his back and CMS is not treating the problem.

He claims that he has been transferred three separate times in order to prolong receipt of proper medical care from CMS, and further claims the MRIs ordered by Dr. Dinakar, Dr. Murthi, and Dr. Mullings for both his shoulders and his knees have been disapproved by Wexford Health Sources via Dr. Robert Smith, who has never examined him. He suggests that defendants are attempting to avoid performing the MRIs because they don't want to document the damage done to his shoulders. Paper No. 22 at p. 4. Plaintiff states when he receives physical therapy he receives only six sessions and must wait for another evaluation before he is sent to physical therapy again, resulting in a loss of any therapeutic progress made, requiring plaintiff to start the processs over again.

Plaintiff further states that CMS needs an ultrasound machine for use in physical therapy and that he is not provided with non-prescription medications by the commissary. Plaintiff states he is told he must purchase over-the-counter medication for himself, but he explains he is indigent and cannot buy the medication. Paper No. 22 at p. 5.

Plaintiff admits that since filing the instant complaint he has begun receiving "steroid injections,"[4] but the injections only "work for a period of time." Paper No. 22 at p. 6. Plaintiff states the injections also cause side effects such as headaches, hot flashes, mood swings, upset

---

[4] The court presumes plaintiff is referring to cortisone injections for treatment of his osteoarthritis.

4

stomach and general aches and pains. In addition, plaintiff states he is concerned that the long-term use of the injections will cause damage to the joint and surrounding tissue. *Id.*

## Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). It is undisputed that plaintiff's condition is painful and requires medical attention to ameliorate that pain. Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (*quoting Farmer* 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if

[he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The actions taken by the health care providers directly involved in plaintiff's care have been far from reckless. Rather, extensive measures have been taken to insure the cause of the pain is diagnosed and that the pain itself is addressed through surgery, physical therapy and medication. Defendant Wexford Health Sources, the utilization review contractor that reviews and approves all requests by on-site and off-site consultants for certain medical devices, tests and procedures, avers that it has not denied any requested care or treatment for plaintiff. Paper No. 14 at Ex. 1. Services and tests that have been approved by Wexford include off-site evaluations and consultations, physical therapy, CT scans, MRIs, surgery, post-surgical physical therapy, pain management, and nerve conduction studies. *Id.* Defendants CMS, Dr. Sonja Wilson, and Dr. Isaias Tessema have also provided evidence that plaintiff's medical complaints have been addressed appropriately and in a timely manner. Paper No. 17 at Ex. B. It is clear from plaintiff's opposition that he simply disagrees with the course of treatment provided. Paper No. 22. Indeed, plaintiff first complains that the surgery made his shoulder worse, then complains that the same surgery was not performed on his other shoulder. Plaintiff's condition is clearly painful and serious, but there is no medically appropriate curative procedure or therapy being deliberately withheld from him. Thus, there is no basis for a finding that the medical care provided was constitutionally inadequate.

No constitutional claim is presented, entitling defendants to summary judgment in their favor. The court therefore declines to exercise supplemental jurisdiction over any state medical malpractice claims raised by the complaint. All negligence claims or claims sounding in medical malpractice shall be dismissed without prejudice by separate order which follows.


<u>July 26, 2010</u>                                         <u>/s/</u>
Date                                                    Catherine C. Blake
                                                         United States District Judge